Matthew L. Lalli (6105)
Jeremy J. Stewart (12247)
SNELL & WILMER L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004
Telephone:  (801) 257-1900
Facsimile:  (801) 257-1800
mlalli@swlaw.com
jjstewart@swlaw.com

David J. Tobin (pro hac vice to be filed)
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street Suite 1900
Dallas, TX 75201
Telephone: (214) 210-2793
dtobin@mwe.com

Jay H. Reiziss (pro hac vice to be filed)
Alexander P. Ott (pro hac vice to be filed)
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001
Telephone: (202) 756-8000
jreiziss@mwe.com
aott@mwe.com

*Attorneys for Plaintiff Cricut, Inc.*

**UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CRICUT, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>v.<br><br><br><br>Hunan Sijiu Technology, Co. Ltd.,<br>Hunan Sijiu Electronic Technology Co., Ltd.,<br>and Guangdong Rongtu Technology Co., Ltd.,<br><br>    Defendants. | **COMPLAINT**<br><br>Case No.  2:24-cv-744<br><br>Judge _____<br><br>**JURY TRIAL DEMANDED** |

1

Plaintiff Cricut, Inc., by and through the undersigned counsel, hereby complains against Defendants Hunan Sijiu Technology, Co. Ltd.; Hunan Sijiu Electronic Technology Co., Ltd.; and Guangdong Rongtu Technology Co., Ltd. for patent infringement and alleges as follows:

## PARTIES

1.    Plaintiff Cricut, Inc. ("Cricut") is a publicly traded corporation (NASDAQ: CRCT) that is headquartered in Delaware, and with its principal place of business at 10855 South River Front Parkway, South Jordan, Utah 84095.

2.    Defendants are Hunan Sijiu Technology, Co. Ltd. ("HSTC"), Hunan Sijiu Electronic Technology Co., Ltd. ("HSET"), and Guangdong Rongtu Technology Co., Ltd. ("GRTC") (collectively, "Defendants").

3.    Each Defendant is a corporation with its principal place of business in China and organized under the laws of China.

4.    The Defendants collectively do business as "HTVRont" or "LOKLiK."

5.    On information and belief, Defendant HSTC has a principal place of business at 1301, Building B-8, Lugu Yuyuan Production Workshop, No. 27, Wenxuan Road, High-tech Development, Changsha, China 410000.  This is the address provided in United States Patent and Trademark Office ("USPTO") assignment records for the HTVRont trademark, U.S. Registration No. 5659602.

| RECEIVING PARTY DATA | |
|---|---|
| **Name:** | HUNAN SIJIU TECHNOLOGY CO., LTD. |
| **Street Address:** | 1301,Building B-8,Lugu Yuyuan Production Workshop, |
| **Internal Address:** | No.27 Wenxuan Road,Changsha High-tech Development, |
| **City:** | Changsha |
| **State/Country:** | CHINA |
| **Postal Code:** | 410000 |
| **Entity Type:** | Limited Company: CHINA |

*See* Reel 007852 Frames 0273-0274.[1]  The above address is also included on product packaging, such as for the HTVRont Heat Press Mini and on the LOKLiK Cutting Machine, shown below respectively:



_____

[1] Available at: https://assignments.uspto.gov/assignments/assignment-tm-7852-0273.pdf



6.      On information and belief, Defendant HSET has a principal place of business at 1301, Building B-8, Lugu Yuyuan Production Workshop, No. 27, Wenxuan Road, High-tech Zone, Changsha, China 410000.  This is the address included on product packaging, such as for the HTVRont 10" x 10" Heat press:



7.      On information and belief, another address for HSTC and HSET is at 1401, 14/F, Building E7, Phase II, Zhongdian Software Park, No. 18 Jianshan Road, Dongfanghong Street, Xiangjiang New District, Hunan Province, China.

8.      On information and belief, Defendant GRTC has its principal place of business at Floor 8, No. 15, Huafa Road, Huakou Community, Ronggui Street, Sunde District, Foshan city, Guangdong Province, China, 528305.  This is the address shown on product packaging, such as for the LOKLiK Cutting Machine, which is shown below:

4



9. An alternative address for Defendant GRTC is: Floor 3, 4 and 5, Building A, Zhizaohui Workshop, No. 8, Huafa Road, Huakou Community, Ronggui Street, Shunde District, Foshan City, Guangdong, P.R. China. This address is provided on product packaging, such as the HTVRont Mini3 Heat Press, as shown below:

**Weight:** 4.0 lb (1.8 kg)
**Dimensions:** 13.6×10.6×7.9 in (34.5×27.0×20.1 cm)
**Manufacturer:** Hunan Sijiu Technology Co., Ltd.
**Producer:** Guangdong Rongtu Technology Co., Ltd.
**Address:** Floor 3, 4 and 5, Building A, Zhizaohui Workshop, No. 8, Huafa Road, Huakou Community, Ronggui Street, Shunde District, Foshan City, Guangdong, P.R. China

10. On information and belief, Defendants may also be contacted at: Yang Min, Long Hua Xin Qu, Wei Dong Long Ke Ji Da Sha 1331-1332, Shenzhen, Guangdong China 518109 and at lin-2018@qq.com. This is the address and contact information that was provided to the United States Patent and Trademark Office in connection with Defendants' HTVRONT trademark, U.S. Registration Number 5659602.

11.     On information and belief, Defendants may be contacted through Jie Luo at 353 East 83rd Street #19L, New York, New York 10028 (jliu@woodrufflawny.com).   Jie Luo submitted the assignment records for HTVRont.  *See* Reel 007852 Frames 0273-0274.

12.     On information and belief, Defendants may also be contacted at: Eric Sands, Sands Angel Trademarks, 74 Bank Street, Abington, Massachusetts, 02351 and at email: ers708@outlook.com and sandy02105@outlook.com.  This is the contact information that the proposed Defendants provided to the United States Patent and Trademark Office in connection with trademark U.S. Serial No. 90496018.

13.     According to product packaging and their internet websites,[2] Defendants may also be contacted electronically through the following:

- Email: customer_service@htvrontvinyl.com; support@loklik.com; customerservice@loklik.com; support@htvront.com; ceo@loklik.com; b2b@loklik.com; Hailey@loklik.com; abraham@loklik.com; pr@htvront.com; branding@htvront.com

- Other: www.facebook.com/htvront; www.pinterest.com/htvront; www.instagram.com/htvront

### JURISDICTION AND VENUE

14.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.* Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

15.     The Court has personal jurisdiction over Defendants because Defendants have, directly or through agents and/or intermediaries, committed acts within the State of Utah, giving

---

[2] https://www.loklik.com/contact; https://www.htvront.com/pages/contact-us

rise to this action and/or have established minimum contacts with Utah and this District such that the exercise of jurisdiction would not offend traditional notions of fair play and justice.

16.    On information and belief, Defendants regularly conduct business in Utah, including this District, and purposefully have availed themselves of the privileges of conducting business in Utah.  In particular, on information and belief, Defendants, directly and/or through their agents and/or intermediaries, use, import, offer for sale, sell, and/or advertise their products in Utah.  In addition, Defendants have placed, and continue to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in the United States including in Utah.

17.    For example, Defendants sell and offer to sell infringing products directly through their websites to the public throughout the United States, including in Utah.  Defendants' direct-to-consumer websites include https://www.htvront.com and https://www.loklik.com.

18.     Defendants also sell and offer to sell infringing products through other sales channels, including the HTVRont Office Store at AliExpress,[3] through their Amazon.com storefront,[4]  and through Walmart.com. The infringing products have been inventoried in the United States, such that they are shipped from Walmart.com and Amazon.com to Utah with 2-day shipping and, for certain products, with next day shipping.

19.    Defendants specifically target the United States for delivery and sales of their infringing products.  They manufacture the infringing products in China and then import them to

---

[3] https://www.aliexpress.com/store/1102024702

[4]           https://www.amazon.com/stores/HTVRONT/page/CB71353F-2052-4250-B0C0-E563BDA60E17

their "142,790 loyal customers" in the United States.  Below is an excerpt from Defendants' website, with arrows showing the targeted flow of goods from China to the United States:[5]



### HTVRONT SALES NETWORK

Our DIY supplies sell to the United States, Australia, Canada, the United Kingdom, and other countries.

20.    When making products available to be ordered directly through Defendants' website, Defendants state for the "Shipping Policy" that their products are "Only available in the U.S. contiguous 48 states."[6]

21.    On information and belief, HTVRont has sent representatives to tradeshows throughout the United States to advertise and promote the infringing products.

22.    Alternatively, and/or in addition, this Court has jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2). This lawsuit arises from actions of Defendants directed

---

[5] https://www.htvront.com/pages/about

[6] https://www.htvront.com/pages/shipping-policy

8

toward the United States, including (1) committing at least a portion of the infringing acts alleged herein and (2) regularly transacting business, soliciting business, and deriving revenue from the sale of infringing products to individuals in the United States. Therefore, Defendants have purposefully availed themselves of the benefits of the United States, including the District of Utah, and the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

23.     Venue is proper in this District under at least 28 U.S.C. § 1391(b), 1391(c), and/or 1400(b). Defendants are foreign residents that have committed acts of infringement in this District, as detailed throughout this complaint.  *See generally In re HTC Corp.*, 889 F.3d 1349 (2018).

## CRICUT'S PATENTED TECHNOLOGY

24.     Cricut is an American company that is dedicated to helping people lead creative lives.  Cricut's platform and ecosystem of interrelated devices enables its engaged and loyal community of over 8.9 million users (as of December 31, 2023) to turn ideas into "I Did It" — Do-It-Yourself goods from custom greeting cards and apparel to on-demand gifts and large-scale decor.  Cricut created an ecosystem of interconnected cutting machine crafting devices, heat-press crafting machines, accessories, and consumable materials for scalability and seamless integration, allowing Cricut to both introduce new products as well as continuously update the functionality and features of existing physical and digital products.  This makes the Cricut ecosystem broadly extensible and empowers its users to unlock ever-expanding creative potential.

25.     The CRICUT® ecosystem of crafting devices consists of interconnected cutting machines, heat presses, and other crafting tools and accessories that provide seamless integration, allowing users to create custom crafts, including greeting cards, apparel, on-demand gifts,

wedding-related services, and large-scale decor. The Cricut crafting devices allow users to create their own professional-looking home-made goods, from start to finish, instead of purchasing manufactured goods from a third-party.

26.    The Cricut cutting machines—such as the CRICUT EXPLORE® line—can cut, score, and create decorative effects using a wide array of materials including paper, vinyl, wood, and leather. Cricut's cutting machines have adopted an innovative look and feel, embodied in design patents, that spans across multiple models of cutting machines, as shown below.







This look and feel enables its users to instantly recognize the cutting machines as authentically "Cricut®" and promotes consumer awareness and trust.

27.     The Cricut heat press devices—including the CRICUT EASYPRESS® line—allow users to take patterns created with the Cricut Explore line of cutting machines and then evenly adhere those patterns onto T-shirts, totes, or tags.  The heat presses provide uniform, consistent and optimal heat in a safe and convenient handheld manner.  The heat presses have also adopted an innovative look and feel, embodied in design patents, that spans across multiple generations of heat presses.  Before Cricut launched its first line of heat press devices, no other products had the innovative look and feel of the Cricut EasyPress devices, as shown below.



| Cricut EasyPress, EasyPress 2, and EasyPress 3 | Cricut EasyPress Mini |

 This look and feel enables its users to instantly recognize the heat presses as authentically "Cricut®" and promotes consumer awareness and trust.

28.     Cricut's release of its innovative heat press machines and cutting machines was followed by a deluge of copycats that other companies have designed abroad, seeking to capitalize off the industry created by Cricut.  Such companies have designed their products to mimic the

11

innovative look and feel of the Cricut products. When customers become dissatisfied with the quality and/or performance of these other products, it harms Cricut and the crafting industry.

29.    Cricut has developed intellectual property, including patents, to protect its innovative, high-quality products. Cricut is committed to protecting its reputation, as well as its customers, employees, and content creators who have made Cricut what it is today. As a result, Cricut is enforcing its intellectual-property rights against illegal outside use. By addressing infringement of its patents, Cricut seeks to not only safeguard its innovations (thus ensuring its ability to continue to innovate and deliver high-quality products), but also to uphold the trust and satisfaction of its loyal customers. Such patents are the subject of this lawsuit.

## ASSERTED PATENTS

30.    On December 28, 2021, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 11,208,758 ("the '758 Patent"), entitled "Heat Press."

31.    On February 20, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,905,646 ("the '646 Patent"), entitled "Heat Press."

32.    On August 18, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. D893,563 ("the D563 Patent"), entitled "Heat Press."

33.    On February 16, 2021, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. D910,724 ("the D724 Patent"), entitled "Heat Press."

34.    On July 27, 2021, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. D926,237 ("the D237 Patent"), entitled "Heat Press."

35.    On May 28, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. D1,029,090 ("the D090 Patent"), entitled "Electronic Cutting Machine."

12

36.     The above patents are collectively referred to herein as "Asserted Patents."  Copies of each of the Asserted Patents are publicly available through numerous online repositories, including but not limited to the United States Patent and Trademark Office at https://ppubs.uspto.gov/pubwebapp/static/pages/ppubsbasic.html.

37.     Each of the Asserted Patents is currently asserted against Defendants in a parallel matter before the International Trade Commission in an Investigation entitled *In the Matter of Certain Crafting Machines and Components Thereof*.

## DEFENDANTS' INFRINGING ACTIVITY

38.     Defendants have made, used, sold for importation into the United States, imported into the United States, and/or sold after importation within the United States heat press machines that infringe one or more of the Asserted Patents.  These products, referred to as the "Infringing Heat Press Products," include, without limitation: HTVRont Sublimation Heat Press Machine Portable Tshirt Press Machine ("HTVRont Heat Press"); HTVRONT Heat Press Machine Mini Small Portable Press Machine ("HTVRont Heat Press Mini"); HTVRONT Mini Heat Press, 3 in 1 Heat Press Machine ("HTVRont Heat Press Mini3"); and HTVRont Hat Press Machine ("HTVRont Hat Press").

39.     Defendants have also made, used, sold for importation into the United States, imported into the United States, and/or sold after importation within the United States cutting machines that infringe one or more of the Asserted Patents.  These products, referred to as the "Infringing Cutting Machine Products," include, without limitation, the LOKLiK Cutting Machine.

40.     Further discovery may uncover additional infringing products.

13

## FIRST CAUSE OF ACTION
### (Infringement of U.S. Patent No. 11,208,758)

41. Cricut repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

42. By assignment, duly recorded with the USPTO, Cricut owns all rights to the '758 Patent, including the right to sue and recover damages for all infringement.

43. The '758 Patent generally relates to a heat press machine. The '758 Patent provides for a safer and more cost-effective heat press machine that can provide uniform, consistent, and optimal heat in a home-use setting. Certain claims are directed to the structural components of the heat press, including the placement of the components and how the components interact with one another.

44. Defendants have infringed at least claims 18-23 of the '758 Patent by making, using, selling for importation into the United States, importing into the United States, and/or selling after importation within the United States the Infringing Heat Press Products. Non-limiting examples of Defendants' infringing acts can be found in the claim charts attached as Exhibits 1-3.

45. Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, the '758 Patent under 35 U.S.C. § 271(a).

46. Defendants induce infringement and contribute to infringement of the '758 Patent under 35 U.S.C. §271(b) and 35 U.S.C. § 271(c), respectively. Based at least on this complaint and the parallel ITC complaint, Defendants have knowledge of the '758 Patent and of their infringement of the '758 Patent. Defendants actively promote the sale, use, and importation of Infringing Heat Press Products. For example, Defendants have taken active steps to encourage and facilitate its partners, affiliates, subsidiaries, resellers, and distributors to import the Infringing

Heat Press Products into the United States.  As another example, Defendants have provided end users online tutorials (e.g., at https://www.htvront.com, https://www.loklik.com/easyHeatPress, and https://www.loklik.com/miniHeatPress) and have provided product manuals with the Infringing Heat Press Products.  By these actions, Defendants have had the specific intent to induce, or were willfully blind to inducing infringement of the '758 Patent.  Defendants have contributed to the direct infringement of the '758 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Infringing Heat Press Products, which are specially made or adapted for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing use.

47.    Defendants' infringement of the '758 Patent has been and continues to be willful, at least since the time of filing and service of this complaint.

48.    Defendants' acts of infringement have injured and damaged Cricut and will continue to injure and damage Cricut.  Cricut is therefore entitled to recover from Defendants the damages it has sustained as a result of Defendants' wrongful and continued acts in an amount to be proven at trial.

49.    Defendants' infringement has damaged and will continue to damage Cricut irreparably, and Cricut has no adequate remedy at law for its injuries.  In addition to actual damages, Cricut is entitled to a permanent injunction enjoining Defendants from infringing the '758 Patent.

50.    Cricut has complied with 35 U.S.C. § 287 by marking its patented products with the number of the '758 Patent.

**SECOND CAUSE OF ACTION**
**(Infringement of U.S. Patent No. 11,905,646)**

51.     Cricut repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

52.     By assignment, duly recorded with the USPTO, Cricut owns all rights to the '646 Patent, including the right to sue and recover damages for all infringement.

53.     The '646 Patent generally relates to a heat press machine.  The '646 Patent provides for a safer and more cost-effective heat press machine that can provide uniform, consistent, and optimal heat in a home-use setting.  Certain claims are directed to the structural components of the heat press, including the placement of the components and how the components interact with one another.  Certain claims are also directed to the composition of insulating layers.

54.     Defendants have infringed at least claims 1, 2, 8-12 and 14-16 of the '646 Patent by making, using, selling for importation into the United States, importing into the United States, and/or selling after importation within the United States the Infringing Heat Press Products.  Non-limiting examples of Defendants' infringing acts can be found in the claim charts attached as Exhibits 4-5.

55.     Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, the '646 Patent under 35 U.S.C. § 271(a).

56.     Defendants induce infringement and contribute to infringement of the '646 Patent under 35 U.S.C. §271(b) and 35 U.S.C. § 271(c), respectively.  Based at least on this complaint and the parallel ITC complaint, Defendants have knowledge of the '646 Patent and of their infringement of the '646 Patent. Defendants actively promote the sale, use, and importation of Infringing Heat Press Products.  For example, Defendants have taken active steps to encourage

16

and facilitate its partners, affiliates, subsidiaries, resellers, and distributors to import the Infringing Heat Press Products into the United States. As another example, Defendants have provided end users online tutorials (e.g., at https://www.htvront.com, https://www.loklik.com/easyHeatPress, and https://www.loklik.com/miniHeatPress) and have provided product manuals with the Infringing Heat Press Products. By these actions, Defendants have had the specific intent to induce, or were willfully blind to inducing infringement of the '646 Patent. Defendants have contributed to the direct infringement of the '646 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Infringing Heat Press Products, which are specially made or adapted for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing use.

57.    Defendants' infringement of the '646 Patent has been and continues to be willful, at least since the time of filing and service of this complaint.

58.    Defendants' acts of infringement have injured and damaged Cricut and will continue to injure and damage Cricut. Cricut is therefore entitled to recover from Defendants the damages it has sustained as a result of Defendants' wrongful and continued acts in an amount to be proven at trial.

59.    Defendants' infringement has damaged and will continue to damage Cricut irreparably, and Cricut has no adequate remedy at law for its injuries. In addition to actual damages, Cricut is entitled to a permanent injunction enjoining Defendants from infringing the '646 Patent.

60.    Cricut has complied with 35 U.S.C. § 287 by marking its patented products with the number of the '646 Patent.

17

## THIRD CAUSE OF ACTION
### (Infringement of U.S. Patent No. D893,563)

61.     Cricut repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

62.     By assignment, duly recorded with the USPTO, Cricut owns all rights to the D563 Patent, including the right to sue and recover damages for all infringement.

63.     The D563 Patent depicts a non-functional visual design of a Cricut hand-held heat press.  The D563 Patent includes eight figures and illustrates the integration of a smooth, inviting, rounded, and essentially square overall shape with a handle as seen in the canonical views of the products.



FIG. 1

The overall product shape includes a series of small ornamental shapes located generally in the area above the cut outs.  These small ornamental shapes include a display shape and ornamental activation surface shapes.

64.     Defendants have infringed the claim of the D563 Patent by making, using, selling for importation into the United States, importing into the United States, and/or selling after

importation within the United States the Infringing Heat Press Products. Non-limiting examples of Defendants' infringing acts can be found in the claim charts attached as Exhibit 6.

65. Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, the D563 Patent under 35 U.S.C. § 271(a).

66. Defendants induce infringement and contribute to infringement of the D563 Patent under 35 U.S.C. §271(b) and 35 U.S.C. § 271(c), respectively. Based at least on this complaint and the parallel ITC complaint, Defendants have knowledge of the D563 Patent and of their infringement of the D563 Patent.

67. Defendants also had knowledge of the D563 Patent and of their infringement from before this complaint was filed. For example, Min Ai, as CEO of Hunan Sijiu Technology Co., Ltd., was aware of the D563 Patent at least of June 30, 2021. On that date, Min Ai identified the D563 Patent when submitting an information disclosure statement in connection with filing U.S. Patent Application Serial No. 29/797,383. Defendants, including Min Ai, were also made aware of the D563 Patent, on April 17, 2021 in connection with prosecution of U.S. Patent Application No. 29/758,736.

68. Defendants actively promote the sale, use, and importation of Infringing Heat Press Products. For example, Defendants have taken active steps to encourage and facilitate its partners, affiliates, subsidiaries, resellers, and distributors to import the Infringing Heat Press Products into the United States. As another example, Defendants have provided end users online tutorials (e.g., at https://www.htvront.com and https://www.loklik.com/easyHeatPress)  and have provided product manuals with the Infringing Heat Press Products. By these actions, Defendants have had the specific intent to induce, or were willfully blind to inducing infringement of the D563 Patent.

19

Defendants have contributed to the direct infringement of the D563 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Infringing Heat Press Products, which are specially made or adapted for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing use.

69.     Defendants' infringement of the D563 Patent has been and continues to be willful, at least since the time of filing and service of this complaint.

70.     Defendants' acts of infringement have injured and damaged Cricut and will continue to injure and damage Cricut.  Cricut is therefore entitled to recover from Defendants the damages it has sustained as a result of Defendants' wrongful and continued acts in an amount to be proven at trial.

71.     Defendants' infringement has damaged and will continue to damage Cricut irreparably, and Cricut has no adequate remedy at law for its injuries.  In addition to actual damages, Cricut is entitled to a permanent injunction enjoining Defendants from infringing the D563 Patent.

72.     Cricut has complied with 35 U.S.C. § 287 by marking its patented products with the number of the D563 Patent.

## FOURTH CAUSE OF ACTION
### (Infringement of U.S. Patent No. D910,724)

73.     Cricut repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

74.      By assignment, duly recorded with the USPTO, Cricut owns all rights to the D724 Patent, including the right to sue and recover damages for all infringement.

75.      The D724 Patent depicts a non-functional visual design of a Cricut small hand-held heat press.  The D724 Patent includes seven figures and illustrates the integration of a smooth, inviting, and rounded overall shape with a rounded internal handle shape that is claimed in this version of the patent.  Again, the overall visual design produces a unified, rounded and cohesive ornamental design for the canonical view of the Cricut mini heat press product.



FIG. 1

76.      Defendants have infringed the claim of the D724 Patent by making, using, selling for importation into the United States, importing into the United States, and/or selling after importation within the United States the Infringing Heat Press Products.  Non-limiting examples of Defendants' infringing acts can be found in the claim charts attached as Exhibit 7.

77.      Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, the D724 Patent under 35 U.S.C. § 271(a).

78.      Defendants induce infringement and contribute to infringement of the D724 Patent under 35 U.S.C. §271(b) and 35 U.S.C. § 271(c), respectively.  Based at least on this complaint

and the parallel ITC complaint, Defendants have knowledge of the D724 Patent and of their infringement of the D724 Patent.

79.     Defendants also had knowledge of the D724 Patent and of their infringement from before this complaint was filed.  For example, Min Ai, as CEO of Hunan Sijiu Technology Co., Ltd., was aware of the D724 Patent at least of April 17, 2021 in connection with prosecution of U.S. Patent Application No. 29/758,736.

80.     Defendants actively promote the sale, use, and importation of Infringing Heat Press Products.  For example, Defendants have taken active steps to encourage and facilitate its partners, affiliates, subsidiaries, resellers, and distributors to import the Infringing Heat Press Products into the United States.  As another example, Defendants have provided end users online tutorials (e.g., at https://www.htvront.com and https://www.loklik.com/miniHeatPress)  and have provided product manuals with the Infringing Heat Press Products.  By these actions, Defendants have had the specific intent to induce, or were willfully blind to inducing infringement of the D724 Patent. Defendants have contributed to the direct infringement of the D724 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Infringing Heat Press Products, which are specially made or adapted for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing use.

81.     Defendants' infringement of the D724 Patent has been and continues to be willful, at least since the time of filing and service of this complaint.

82.     Defendants' acts of infringement have injured and damaged Cricut and will continue to injure and damage Cricut.  Cricut is therefore entitled to recover from Defendants the

damages it has sustained as a result of Defendants' wrongful and continued acts in an amount to be proven at trial.

83. Defendants' infringement has damaged and will continue to damage Cricut irreparably, and Cricut has no adequate remedy at law for its injuries. In addition to actual damages, Cricut is entitled to a permanent injunction enjoining Defendants from infringing the D724 Patent.

84. Cricut has complied with 35 U.S.C. § 287 by marking its patented products with the number of the D724 Patent.

**FIFTH CAUSE OF ACTION**
**(Infringement of U.S. Patent No. D926,237)**

85. Cricut repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

86. By assignment, duly recorded with the USPTO, Cricut owns all rights to the D237 Patent, including the right to sue and recover damages for all infringement.

87. The D237 Patent depicts a non-functional visual design of a Cricut small hand-held heat press. The D237 Patent includes seven figures and illustrates the integration of a smooth, inviting, and rounded overall shape. The overall visual design produces a unified, rounded and cohesive ornamental design for the canonical view of the Cricut mini heat press product. The visual design depicted in D237 Patent disclaims a rounded center portion of the product.



FIG. 1

The broken lines shown in the drawings of the D237 Patent illustrate portions of the heat press that form no part of the claimed design.

88.     Defendants have infringed the claim of the D237 Patent by making, using, selling for importation into the United States, importing into the United States, and/or selling after importation within the United States the Infringing Heat Press Products.  Non-limiting examples of Defendants' infringing acts can be found in the claim charts attached as Exhibit 8.

89.     Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, the D237 Patent under 35 U.S.C. § 271(a).

90.     Defendants induce infringement and contribute to infringement of the D237 Patent under 35 U.S.C. §271(b) and 35 U.S.C. § 271(c), respectively.  Based at least on this complaint and the parallel ITC complaint, Defendants have knowledge of the D237 Patent and of their infringement of the D237 Patent.

91.     Defendants actively promote the sale, use, and importation of Infringing Heat Press Products.  For example, Defendants have taken active steps to encourage and facilitate its partners, affiliates, subsidiaries, resellers, and distributors to import the Infringing Heat Press Products into

the United States.  As another example, Defendants have provided end users online tutorials (e.g., at https://www.htvront.com and https://www.loklik.com/miniHeatPress) and have provided product manuals with the Infringing Heat Press Products.  By these actions, Defendants have had the specific intent to induce, or were willfully blind to inducing infringement of the D237 Patent. Defendants have contributed to the direct infringement of the D237 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Infringing Heat Press Products, which are specially made or adapted for use in an infringing manner and are not staple articles of commerce suitable for substantial non-infringing use.

92.    Defendants' infringement of the D237 Patent has been and continues to be willful, at least since the time of filing and service of this complaint.

93.    Defendants' acts of infringement have injured and damaged Cricut and will continue to injure and damage Cricut.  Cricut is therefore entitled to recover from Defendants the damages it has sustained as a result of Defendants' wrongful and continued acts in an amount to be proven at trial.

94.    Defendants' infringement has damaged and will continue to damage Cricut irreparably, and Cricut has no adequate remedy at law for its injuries.  In addition to actual damages, Cricut is entitled to a permanent injunction enjoining Defendants from infringing the D237 Patent.

95.    Cricut has complied with 35 U.S.C. § 287 by marking its patented products with the number of the D237 Patent.

## SIXTH CAUSE OF ACTION
### (Infringement of U.S. Patent No. D1,029,090)

96.   Cricut repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

97.   By assignment, duly recorded with the USPTO, Cricut owns all rights to the D090 Patent, including the right to sue and recover damages for all infringement.

98.   The D090 Patent depicts a non-functional visual design of a Cricut cutting machine. The D090 Patent illustrates the integration of smooth, inviting and rounded cover end shapes with two aesthetically proportioned rectangular open panel shapes.  The overall visual design produces a unified and cohesive ornamental design for the canonical view of the Cricut cutting machine product.



The broken lines immediately adjacent the shaded areas represent the bounds of the claimed design, while all other broken lines are directed to environment; the broken lines form no part of

the claimed design.

99.     Defendants have infringed the claim of the D090 Patent by making, using, selling for importation into the United States, importing into the United States, and/or selling after importation within the United States the Infringing Cutting Machine Products.  Non-limiting examples of Defendants' infringing acts can be found in the claim charts attached as Exhibit 9.

100.    Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, the D090 Patent under 35 U.S.C. § 271(a).

101.    Defendants induce infringement and contribute to infringement of the D090 Patent under 35 U.S.C. §271(b) and 35 U.S.C. § 271(c), respectively.  Based at least on this complaint and the parallel ITC complaint, Defendants have knowledge of the D090 Patent and of their infringement of the D090 Patent.

102.    Defendants actively promote the sale, use, and importation of Infringing Cutting Machine Products.  For example, Defendants have taken active steps to encourage and facilitate its partners, affiliates, subsidiaries, resellers, and distributors to import the Infringing Cutting Machine Products into the United States.  As another example, Defendants have provided end users online tutorials (e.g., at https://www.loklik.com)  and have provided product manuals with the Infringing Cutting Machine Products.  By these actions, Defendants have had the specific intent to induce, or were willfully blind to inducing infringement of the D090 Patent.  Defendants have contributed to the direct infringement of the D090 Patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Infringing Cutting Machine Products, which are specially made or adapted for use in an

27

infringing manner and are not staple articles of commerce suitable for substantial non-infringing use.

103. Defendants' infringement of the D090 Patent has been and continues to be willful, at least since the time of filing and service of this complaint.

104. Defendants' acts of infringement have injured and damaged Cricut and will continue to injure and damage Cricut. Cricut is therefore entitled to recover from Defendants the damages it has sustained as a result of Defendants' wrongful and continued acts in an amount to be proven at trial.

105. Defendants' infringement has damaged and will continue to damage Cricut irreparably, and Cricut has no adequate remedy at law for its injuries. In addition to actual damages, Cricut is entitled to a permanent injunction enjoining Defendants from infringing the D090 Patent.

106. Cricut has complied with 35 U.S.C. § 287 by marking its patented products with the number of the D090 Patent.

## JURY DEMAND

107. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. Declaring that Defendants have infringed the Asserted Patents, directly and indirectly, literally and/or under the doctrine of equivalents.

B. Declaring that Defendants infringement has been willful.

C.  Awarding Cricut damages arising out of this infringement of the Asserted Patents, including enhanced damages pursuant to 35 U.S.C. 284.

D.  Permanently enjoining Defendants and their respective officers, agents, servants, employees, and those acting in privity with it, from further infringement, including inducing infringement and contributory infringement, of the Asserted Patents.

E.  Awarding attorneys' fees to Cricut pursuant to 35 U.S.C. 285 or as otherwise permitted by law; and

F.  Awarding to Cricut such other pre- and post-judgment interest, costs, and further relief as the Court deems just and proper.

DATED this 4th day of October, 2024.

SNELL & WILMER, L.L.P.

/s/  Jeremy J. Stewart
Matthew L. Lalli
Jeremy J. Stewart

MCDERMOTT WILL & EMERY LLP
David J. Tobin (pro hac vice to be filed)
Jay H. Reiziss (pro hac vice to be filed)
Alexander P. Ott (pro hac vice to be filed)

Attorneys for Cricut, Inc.